UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

**Docket Number(s):** No. 23-7250

**Caption [use short title]**

**Motion for:** Dismissal

United States v. Juan Jiggetts

Set forth below precise, complete statement of relief sought:

Dismissal of this appeal from Jiggetts's sentence based on Jiggetts's waiver of his appellate rights.

**MOVING PARTY:** United States of America
**OPPOSING PARTY:** Juan Jiggetts

☐ Plaintiff    ☐ Defendant
☐ Appellant/Petitioner    ☒ Appellee/Respondent

**MOVING ATTORNEY:** Damian Williams, U.S. Attorney, Southern District of New York
**OPPOSING ATTORNEY:** Anthony L. Ricco

[name of attorney, with firm, address, phone number and e-mail]

By: Matthew J. King, Assistant U.S. Attorney
20 Vesey Street, Suite 400

26 Federal Plaza, 37th Floor New York, NY 10278
New York, NY 10007

(212) 637-2384; Email: matthew.king2@usdoj.gov
(212) 791-3919; Email: tonyricco@aol.com

**Court- Judge/ Agency appealed from:** The Honorable Analisa Torres, United States District Judge, Southern District of New York

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☒ Yes    ☐ No (explain):

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**
Has this request for relief been made below?    ☐ Yes ☐ No
Has this relief been previously sought in this court?    ☐ Yes ☐ No

Requested return date and explanation of emergency:

Opposing counsel's position on motion:
☐ Unopposed ☒ Opposed ☒ Don't Know
Does opposing counsel intend to file a response:
☒ Yes ☐ No ☒ Don't Know

Is the oral argument on motion requested?    ☐ Yes ☒ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?    ☐ Yes ☒ No If yes, enter date:

**Signature of Moving Attorney:**
MATTHEW KING  Digitally signed by MATTHEW KING  Date: 2024.07.18 17:46:10 -04'00'
**Date:** 7/18/2024
**Service:** ☒ Electronic    ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
------------------------------------ x
                                            :

UNITED STATES OF AMERICA,    :    **AFFIRMATION IN SUPPORT OF MOTION TO DISMISS**

               *Appellee*,    :

               - v. -    :    No. 23-7250

JUAN JIGGETTS, also known as Sealed Defendant 1, also known as Showcase,    :

           *Defendant-Appellant.*    :

------------------------------------ x

STATE OF NEW YORK            )
COUNTY OF NEW YORK         : ss.:
SOUTHERN DISTRICT OF NEW YORK  )

    MATTHEW J. KING, pursuant to 28 U.S.C. § 1746, hereby affirms under penalty of perjury:

    1.    I am an Assistant United States Attorney in the Office of Damian Williams, United States Attorney for the Southern District of New York, and I represent the Government in this appeal. I submit this affirmation in support of the Government's motion to dismiss this appeal brought by defendant-appellant Juan Jiggetts based on Jiggetts's knowing and voluntary waiver of his appellate rights.

## PRELIMINARY STATEMENT

2.　　Jiggetts appeals from a judgment of conviction entered on September 13, 2023, in the United States District Court for the Southern District of New York, by the Honorable Analisa Torres, United States District Judge, following Jiggetts's guilty plea.

3.　　Indictment 21 Cr. 664 (AT) (the "Indictment") was filed on November 3, 2021, and unsealed November 19, 2021, in four counts. Count One charged Jiggetts with conspiring to commit sex trafficking, in violation of 18 U.S.C. § 1594(c). Counts Two and Three each charged Jiggetts with sex trafficking a particular victim ("Victim-1" and "Victim-2," respectively), in violation of 18 U.S.C. § 1591(a) and (b)(1). Count Four charged Jiggetts with using interstate commerce to promote unlawful activity, in violation of 18 U.S.C. § 1952(a)(3).

4.　　On April 7, 2023, Jiggetts appeared before Judge Torres and pled guilty to Count Two of the Indictment, pursuant to a plea agreement with the Government (the "Plea Agreement"). In the Plea Agreement, Jiggetts stipulated, among other things, that he would not appeal a term of imprisonment less than or equal to 235 months, a term of supervised release less than or equal to the statutory maximum term of life, a fine less than or equal to $250,000, restitution less than or equal to $5.7 million, forfeiture of less than or equal to $1.9 million, or any special assessment less than or equal to $100.

2

5. On September 12, 2023, Judge Torres sentenced Jiggetts to 235 months' imprisonment, to be followed by five years' supervised release, and imposed restitution of $5.7 million, forfeiture of $1.9 million, and a $100 special assessment. Judgment was entered the next day.

6. On May 1, 2024, Jiggetts filed his principal brief, arguing that his sentence was substantively unreasonable.

7. Jiggetts is currently serving his sentence.

## STATEMENT OF FACTS

### A. The Offense Conduct

8. From at least 2009 through at least 2018, Jiggetts operated and led a sex-trafficking and prostitution enterprise that recruited vulnerable women and then exploited them for Jiggetts's personal financial gain. (PSR ¶ 11).[1] Jiggetts required the women he trafficked to engage in sex acts with multiple customers in a single day, seven days a week, earning up to thousands of dollars per day—almost all of which Jiggetts took from the victims for himself. (PSR ¶ 11).

---

[1] "PSR" or "Presentence Report" refers to the Presentence Investigation Report prepared by the United States Probation Office ("Probation Office") in connection with Jiggetts's sentencing; "Br." refers to Jiggetts's brief on appeal; "A." refers to the appendix filed with that brief; and "Ex." refers to an exhibit to this affirmation. Unless otherwise noted, case quotations omit internal quotations marks, citations, and previous alterations.

3

9. Jiggetts used violence, threats of violence, and other forms of coercion to recruit his victims, to induce them to commit commercial sex acts for his financial benefit, and to keep them from leaving his sphere of control. (PSR ¶ 13). On many occasions, Jiggetts beat his victims, including if they resisted engaging in prostitution when directed, if they missed calls from potential clients, or if they tried to escape. (PSR ¶ 13). Jiggetts forced at least one of his victims to have sex with him on multiple occasions. (PSR ¶ 13). Occasionally, Jiggetts would use his victims to rob would-be johns, directing his victims to lure the men into sexual situations, drug them, and then steal their valuables. (PSR ¶ 14). Additional details regarding Jiggetts' trafficking of Victim-1 and Victim-2, including the extreme violence Jiggetts used to force those victims to engage in commercial sex acts for him, are set forth in the Presentence Report. (*See generally* PSR ¶¶ 15-23 (as to Victim-1), 24-35 (as to Victim-2)).

10. Jiggetts's sex-trafficking enterprise was far-reaching and operated from apartments and hotel rooms in New York, New Jersey, Washington, D.C., Maryland, and Florida. (PSR ¶¶ 12, 36). Jiggetts used the internet to post advertisements on websites including Backpage and Megapersonals, offering his victims for commercial sex acts. (PSR ¶ 12). During the relevant time period, Jiggetts trafficked at least eight women. (PSR ¶ 12). Upon his arrest, Jiggetts asked the arresting law enforcement agents, "Do you have any minors on me?", which the agents understood

4

to be inquiring as to whether the investigation had established that Jiggetts had sex-trafficked any minor victims. (PSR ¶ 37).

**B.     The Plea Agreement and the Guilty Plea**

11.   On April 7, 2023, Jiggetts appeared before Judge Torres and pled guilty to Count Two of the Indictment pursuant to the Plea Agreement. (A. 28-34; *see* Ex. A (Plea Tr.)).

12.   The Plea Agreement contained a stipulation between the parties as to the application of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."). The parties agreed that Jiggetts's offense level and Criminal History Category yielded a Guidelines range of 188 to 235 months' imprisonment, with a mandatory minimum term of 180 months' imprisonment (the "Stipulated Guidelines Range"). (A. 31). The parties also agreed that neither a downward nor an upward departure from the Stipulated Guidelines Range was warranted, and that neither party would seek any Guidelines departure or adjustment not set forth in the Plea Agreement. (A. 31). The parties stipulated that either party could seek a non-Guidelines sentence based on application of the sentencing factors set forth in 18 U.S.C. § 3553(a). (A. 31). The parties acknowledged that any sentence to be imposed upon Jiggetts would be determined solely by the District Court, which could impose any sentence above the mandatory minimum, up to and including the statutory maximum sentence. (A. 32).

5

13. In the Plea Agreement, Jiggetts agreed that he would not file a direct appeal or bring a collateral challenge of "any sentence within or below the Stipulated Guidelines Range of 188 to 235 months' imprisonment." (A. 32). The parties agreed that this waiver would be binding "even if the Court employs a Guidelines analysis different from that stipulated to" in the Plea Agreement. (A. 32). Jiggetts also agreed not to appeal or collaterally challenge "any term of supervised release that is less than or equal to the statutory maximum"; "any fine that is less than or equal to $250,000"; "any restitution amount that is less than or equal to $5.7 million"; "any forfeiture amount that is less than or equal to $1.9 million"; and "any special assessment that is less than or equal to $100." (A. 32).

14. Before accepting Jiggetts's guilty plea, Judge Torres conducted a thorough allocution that complied with Federal Rule of Criminal Procedure 11. (*See* Ex. A).

15. After placing Jiggetts under oath, Judge Torres warned Jiggetts that any false statements could be used against him in a prosecution for perjury and then established that Jiggetts was competent to plead guilty. (Ex. A at 3-5). Next, Judge Torres confirmed that Jiggetts had discussed the charges against him and the consequences of entering a guilty plea with his attorney, and that he was satisfied with his attorney's representation. (Ex. A at 5-7).

6

16. Judge Torres confirmed that Jiggetts understood the rights he would be giving up by pleading guilty, including his rights: (a) to plead not guilty; (b) to a speedy and public jury trial where he would be presumed innocent and the Government would bear the burden of proving his guilt beyond a reasonable doubt; (c) to the assistance of counsel, including court-appointed counsel if necessary, at trial and at every other stage of the proceedings; (d) to confront and cross-examine witnesses; (e) to testify, present evidence, and compel the attendance of witnesses; (f) to appeal a conviction resulting from the trial to a higher court; and (g) against compelled self-incrimination. (Plea Tr. 7-9). Jiggetts stated that he understood those rights and that he would be waiving them by pleading guilty. (Ex. A at 9-10).

17. At Judge Torres's request, the Government set forth the elements of the offense to which Jiggetts was pleading guilty. (Ex. A at 10-11). Judge Torres then advised Jiggetts of the maximum and minimum penalties he would face as a result of his guilty plea, including a maximum sentence of lifetime imprisonment and a mandatory minimum sentence of 15 years' imprisonment. (Ex. A at 11-13).

18. Judge Torres advised Jiggetts that the Guidelines were advisory and that it was possible that she would impose a higher sentence than the Stipulated Guidelines Range if she believed that doing so would "best satisf[y] the purposes of criminal law," (Ex. A at 14), and that no one, including Jiggetts's counsel, could predict his eventual sentence, (Ex. A at 19-20).

7

19. Jiggetts confirmed that (a) he had closely reviewed the Plea Agreement with his attorney; (b) he understood the entire Plea Agreement; (c) he had not been forced, threatened, or induced to sign the Plea Agreement; and (d) he understood that the Plea Agreement constituted the entire agreement between him and the Government. (Ex. A at 14-16, 19-20). Jiggetts acknowledged his understanding that the Plea Agreement provided for a Stipulated Guidelines Range of 188 to 235 months' imprisonment, with a mandatory minimum of 180 months' imprisonment. (Ex. A at 15-16). Judge Torres advised Jiggetts that the District Court was required to make its own independent calculation of the Guidelines, which could differ from the parties' stipulation. (Ex. A at 16).

20. Judge Torres specifically ensured that Jiggetts understood the Plea Agreement's appellate waiver provisions. Jiggetts confirmed that he understood that he was giving up his right to appeal or otherwise challenge any sentence of 235 months' imprisonment or less, any fine of $250,000 or less, any restitution order of $5.7 million or less, or any forfeiture of $1.9 million or less. (Ex. A at 16-18).

21. Jiggetts confirmed that he was pleading guilty voluntarily and of his own free will, and that his guilty plea did not result from any force, threats, bribes, or promises, other than the promises contained in the Plea Agreement. (Ex. A at 19-20).

22. Judge Torres confirmed that there was a factual basis for Jiggetts's plea, asking Jiggetts to describe in his own words what he did that made him guilty. Jiggetts stated that he "trafficked Victim 1" between "2009 and 2017 . . . [i]n the Bronx, New York." (Ex. A at 21). Jiggetts explained that by "trafficked," he meant that he "forced somebody into paying me under—I enticed somebody, I patronized somebody, and I also put up ads for a female victim which was Victim 1" to "ha[ve] sex for money." (Ex. A at 21). Jiggetts added that he forced Victim 1 to engage in sex acts and to give him the proceeds of those acts by "[t]elling them that if they didn't . . . then I would do something to them . . . [l]ike beat them up." (Ex. A at 22). Jiggetts confirmed that he recruited Victim-1 and posted advertisements for her "[o]n an online service." (Ex. A at 22). Jiggetts confirmed that he trafficked Victim-1 not only in the Bronx, but also in Washington, D.C., and that he engaged in this conduct for money. (Ex. A at 23). Jiggetts acknowledged that he knew, while he was engaged in the conduct he described, that it was wrong and illegal. (Ex. A at 23).

23. At the conclusion of the change-of-plea hearing, Judge Torres found that Jiggetts understood his rights and the consequences of a guilty plea, and that Jiggetts's plea was knowing, voluntary, and supported by a factual basis. (Ex. A at 25-26). Judge Torres therefore accepted Jiggetts's guilty plea. (Ex. A at 26).

24. Jiggetts challenges on appeal only the incarceratory component of his sentence.

9

C. **The Sentencing Proceeding**

25. In advance of Jiggetts's sentencing, the Probation Office prepared the Presentence Report. The Probation Office determined that the applicable Guidelines range was 210 to 262 months' imprisonment, which differed from the Stipulated Guidelines Range set forth in the Plea Agreement because the Probation Office determined that Jiggetts was in a higher Criminal History Category. (PSR ¶ 108).

26. On September 12, 2023, Jiggetts appeared before Judge Torres for sentencing. (*See* Ex. B (Sent'g Tr.)). The sentencing proceeding complied with Federal Rule of Criminal Procedure 32.

27. Judge Torres acknowledged that she had received and reviewed the Presentence Report and the parties' sentencing submissions. (Ex. B at 2). Jiggetts and his counsel confirmed that they had reviewed and discussed the Presentence Report and had no objections to the factual recitation set forth in the report. (Ex. B at 2-3). Judge Torres then adopted the Presentence Report's factual findings. (Ex. B at 3).

28. With respect to the Guidelines calculation, Judge Torres concluded that the Presentence Report contained insufficient evidence to support the Probation Office's addition of two points to Jiggetts's criminal history category for a past probation revocation. (Ex. B at 4). After conducting an independent evaluation after hearing from the parties, Judge Torres concluded that the correct Guidelines range

10

was 188 to 235 months' imprisonment, consistent with the Stipulated Guidelines Range set forth in the Plea Agreement. (Ex. B at 4-8).

29. Judge Torres then heard arguments from the parties concerning the appropriate sentence under the Section 3553(a) factors. The Government sought a sentence of 235 months' imprisonment, at the top of the Stipulated Guidelines Range, emphasizing the violent and abusive nature of Jiggetts's conduct, which he committed against at least eight women over nearly a decade, and its devastating effect on the victims and society. (Ex. B at 8-12). The defense sought the mandatory minimum sentence of fifteen years' imprisonment, highlighting Jiggetts's difficult upbringing. (Ex. B at 12-22). Jiggetts then addressed the District Court personally. (Ex. B at 22-23). A survivor of Jiggetts' sex trafficking enterprise delivered a victim impact statement that highlighted the lasting, detrimental effects of Jiggetts's conduct on her mental health, including her development of posttraumatic stress disorder and depression; on her relationship with her family, which became distant; and on her ability to trust and socialize with other people, which remains limited. (Ex. B at 23-30).

30. Before imposing sentence, Judge Torres gave a detailed explanation of the reasons for the sentence she was about to impose, consistent with the Section 3553(a) factors. (Ex. B at 29-35). Judge Torres expressly considered Jiggetts's history and characteristics, his prior criminal history, the seriousness of his

11

offense—including the long duration and violent nature of his conduct—and academic literature about the impact of sex trafficking on its victims. (Ex. B at 29-35).

31. After considering the Section 3553(a) factors, Judge Torres sentenced Jiggetts to 235 months' imprisonment, to be followed by five years' supervised release, and imposed a $100 mandatory special assessment, $5.7 million in restitution, $1.9 million in forfeiture, and no fine. (Ex. B at 35-36). Judge Torres advised Jiggetts of his right to appeal his conviction and sentence, "except to whatever degree [he] may have validly waived that right as part of [his] plea agreement." (Ex. B at 39).

## ARGUMENT

### Jiggetts's Appeal Should Be Dismissed Because He Knowingly and Voluntarily Waived His Right to Appeal

32. Jiggetts challenges his sentence on the sole ground that the sentence chosen by the District Court after considering the Section 3553(a) factors was substantively unreasonable. (Br. 14-24). Jiggetts's sentencing challenge is barred by the clear terms of the Plea Agreement's appeal waiver, which is valid on its face and which Jiggetts entered into knowingly and voluntarily. Accordingly, Jiggetts's appeal should be dismissed pursuant to the waiver.

### A. Applicable Law

33. "Waivers of the right to appeal a sentence are presumptively enforceable." *United States v. Borden*, 16 F.4th 351, 354 (2d Cir. 2021); *see United States v. Coston*, 737 F.3d 235, 237 (2d Cir. 2013); *United States v. Riggi,* 649 F.3d 143, 147-48 (2d Cir. 2011); *United States v. Lee*, 523 F.3d 104, 106 (2d Cir. 2008). This Court generally enforces an appeal waiver that is "knowingly, voluntarily and competently provided by the defendant." *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000).

34. The circumstances under which this Court will decline to enforce an appeal waiver are extremely limited. *See id.* at 319 ("The[] exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of our jurisprudence."). The exceptions include situations:

> when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence.

*Id.*; *accord United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010).

35. Accordingly, this Court has routinely "upheld waiver provisions even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in

13

the plea agreement." *Gomez-Perez*, 215 F.3d at 319; *see also, e.g.*, *United States v. Rosa*, 123 F.3d 94, 97 (2d Cir. 1997) ("This rule has been held to bar even those appeals which claim that the sentencing court illegally sentenced the defendant under the Guidelines and relevant statutes, so long as the court nevertheless imposed a sentence within the range outlined in the agreement."). A defendant's "waiver of his right to challenge his sentence plainly includes a waiver of his right to claim errors arising out of the District Court's crafting of [his] sentence." *Arevalo*, 628 F.3d at 97.

36. An appeal waiver is knowingly and voluntarily entered where, during the plea hearing, the defendant's attention was drawn to the waiver provision in the plea agreement and the defendant confirms his understating of the provision and his knowing intention to enter into it. *See United States v. DeJesus*, 219 F.3d 117, 121 (2d Cir. 2000) (rejecting defendant's contention that he did not knowingly waive right to appeal in plea agreement because contention was inconsistent with his statements during plea colloquy).

37. This Court reviews an unpreserved challenge to the knowing and voluntary nature of a defendant's waiver of his appellate rights only for plain error. *United States v. Cook*, 722 F.3d 477, 479 (2d Cir. 2013). The plain-error standard requires a defendant to establish "(1) there was error, (2) the error was plain, (3) the error prejudicially affected his substantial rights, and (4) the error seriously affected

14

the fairness, integrity or public reputation of judicial proceedings." *Id.* at 481. A Rule 11 error affects a defendant's substantial rights only where he "demonstrate[s] that there is a reasonable probability that, but for the error, he would not have entered the plea." *Id.* at 481.

B.   **Jiggetts Knowingly and Voluntarily Waived His Right to Appeal His Sentence and Asserts No Argument to the Contrary**

38.   The appeal waiver contained in Jiggetts's Plea Agreement is valid and enforceable, and the record reflects that Jiggetts knowingly and voluntarily agreed to it. Accordingly, this appeal—which challenges only the substantive reasonableness of Jiggetts's sentence of imprisonment—should be dismissed.

39.   In the Plea Agreement, Jiggetts expressly waived his right to appeal a sentence of 235 months' imprisonment or less. (A. 32). During the change-of-plea proceeding, Jiggetts confirmed that he had read the Plea Agreement and had discussed it with his attorney. (Ex. A at 14-15). Judge Torres specifically confirmed that Jiggetts understood that he would not be permitted to appeal any sentence of 235 months' imprisonment or less. (Ex. A at 16-17). Jiggetts acknowledged his understanding and proceeded with his guilty plea. Thus, Jiggetts's waiver was knowing and voluntary. *See, e.g., Cook*, 722 F.3d at 481-82 (concluding that district court colloquy during guilty plea proceeding in which defendant confirmed he understood appeal waiver and was knowingly and voluntarily agreeing to it is sufficient); *United States v. Coston*, 737 F.3d 235, 237 (2d Cir. 2013) (same).

15

40. Indeed, Jiggetts has not even attempted to claim that his appeal waiver was not knowing and voluntary, let alone established that each of the four plain-error requirements have been satisfied. *See Cook*, 722 F.3d at 481. Nor could he on this record. There was no error, plain or otherwise, in the District Court's finding at the change-of-plea proceeding that the waiver was knowing and voluntary. Nor do any of the exceptions to the enforcement of appellate waivers apply. The Government never breached the Plea Agreement; Judge Torres did not sentence Jiggetts based on any impermissible factors; and Judge Torres articulated at length her reasoning for the chosen sentence. (Ex. B at 30-35).

41. Because Judge Torres imposed a sentence of 235 months' imprisonment, within the appeal waiver provision, Jiggetts's appeal is barred by the plain language of the Plea Agreement. To consider issues beyond the enforceability of the appellate waiver in these circumstances would undermine the plea-bargaining process, the benefits of which this Court has long recognized:

> In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

16

*United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993); *accord United States v. Pearson*, 570 F.3d 480, 485 (2d Cir. 2009). Accordingly, Jiggetts's appeal from his sentence should be dismissed.

## CONCLUSION

42. Jiggetts's knowing and voluntary waiver of his right to appeal his sentence should be given effect, and his appeal should be dismissed.[2]

Dated:    New York, New York
          July 18, 2024

                                             /s/
                                    Matthew J. King
                                    Assistant United States Attorney
                                    Telephone: (212) 637-2384

---

[2] Should the Court deny this motion, the Government respectfully requests that it be permitted to file a merits brief within 60 days of the date of entry of the order denying this motion.

17

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this motion complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare this motion, there are 3,668 words in this motion.

> DAMIAN WILLIAMS
> United States Attorney for the
> Southern District of New York
>
> By: _____/s/_____
> Matthew J. King
> Assistant United States Attorney
> Telephone: (212) 637-2384