UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| UNITED STATES OF AMERICA | Docket. No. 23-7250 |
| - against - | DECLARATION IN OPPOSITION<br>TO MOTION TO DISMISS APPEAL |
| JUAN JIGGETTS, | |
| Defendant-Appellant | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

STATE OF NEW YORK           )
COUNTY OF NEW YORK          :  ss .:
SOUTHERN DISTRICT OF NEW YORK )

Anthony L. Ricco, Esq., pursuant to Title 28, United States Code, section 1746, hereby declares under the penalties of perjury:

I am counsel for the Defendant-Appellant, Juan Jiggetts, and I make this declaration in opposition to the government's motion to dismiss his appeal.

## I.  Procedural Background

<u>Original Proceedings in the District Court and Direcct Appeal to this Court</u>

There is no dispute with the procedural history of the case. I was appointed, pursuant ot he Criminal Justice Act, to represent Juan Jiggetts in the original proceedings in the District Court and my representation of Juan Jiggetts has continued on Appeal to the Second Circuit Court of Appeals, having filed a notice of appearance in this court under the above docket number, back on November 29, 2023.

On March 7, 2023, Juan Jiggetts appeared before the Hon. Analisa Torres, and pleaded guilty, pursuant to a written plea agreement, to the criminal conduct set forth under Count Two of the indictment of docket number 21 Cr. 664 (AT), which alleged that from 2009 up to and including

2017, in the Southern District of New York and elsewhere, Juan Jiggetts recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and solicited, and aided and abetted the recruitment, harboring, transport, and advertisement of an individual ("Victim-1"), in the Bronx, NY and elsewhere, who was then caused to engage in at least one commercial sex act by means of force, threats of force, fraud, and coercion, which sex act benefitted Juan Jiggetts. See, *Transcript dated March 7, 2023, page 10, ECF No. 32*.

On September 12, 2023, Juan Jiggetts appeared for sentencing before the district court and was sentenced to 235 months imprisonment, to be followed by a five (5) year term of supervised release, as well as a $100 special assessment, ordered to pay restitution in the sum of $5,700,000, and forfeiture of $1.9 million. After the entry of his sentence, Juan Jiggetts filed a *pro se* Notice of Appeal with the district court, although he waived his general rights to appeal as a condition of his plea agreement. See, *ECF No. 47, Filed 10/02/23*.

Juan Jiggetts instructed counsel that he wished to challenge the constitutionally of the method by which the court arrived at the imposition of his sentence.

### Juan Jiggetts Has Requested That The Second Circuit Review The Sentence Imposed

Juan Jiggetts recognizes, as the government accurately points out, that his plea agreement contains a stipulated Guidelines range of 188 to 235 months' imprisonment, and that it also contains an appellate waiver should the court impose a sentence of 235 months or less, any fine of $250,000 or less, any restitution order of $5.7 million or less, or any forfeiture of $1.9 million or less.

The government, placing procedural form over substance, is of the view that this waiver forecloses an appellate review of the fairness of the method upon which the district arrived at the ultimate sentence imposed of 235 months. Defense counsel is very much aware that there are very few instances where the Second Circuit will review a sentence where there has been a waiver of

appeal.

In *United States v. Yemitan*, 70 F.3d 746, 747-49 (2d Cir. 1995), the Second Circuit recognized that a waiver of appellate rights does not foreclose appeal in every case; nevertheless, the Court rejected appellant's claim that a waiver was "unenforceable because the district court's sentence was illegal" in light of court's failure to explain sentence as required by 18 U.S.C. § 3553(c)(1)).

Later, in *United States v. Rosa*, 123 F.3d 94, 98 (2d Cir. 1997), the Court stated, "[w]e have not held criminal defendants to their waivers of this right in every circumstance." The Second Circuit went on to state:

> Our oversight role permits us to accept appeal of a case where the sentence or the agreement calls for it, despite our preference fordeferring to the parties' freedom to contract. We will certainly often be willing to set aside the waiver and accept appeal when constitutional concerns are implicated, whether those concerns be related to a particular constitutional provision such as the ex post facto clause, or whether it simply appears that the ultimate sentence is so far beyond the anticipated range that to deny the right of appeal would raise serious questions of fundamental fairness. We may also be willing to accept such an appeal for lesser improprieties, including abuse of judicial discretion. <u>We are not prepared today to outline an exhaustive list of the circumstances under which we would or would not accept such an appeal</u>. (Emphasis Added)

*United States v. Rosa*, 123 F.3d 94, 101 (2d Cir. 1997)

More recently in *United States v. Woltmann*, 610 F.3d 37 (2d Cir. 2010), the Second Circuit added two additional categories of cases where the Court may be willing to set aside a waiver and accept appeal - - those where the sentence was "reached in a manner that the plea agreement did not anticipate" or where the sentencing court "failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility."

Additionally, other Circuits have different views regarding appellate waivers, which has not

been addressed by the Supreme Court. For instance, the First, Third and Eighth Circuits recognize a "miscarriage of justice" exception to the validity of appellate waivers, which can beapplied in rare circumstances where the defendant would suffer a miscarriage of justice by enforcement of his plea agreement's appellate waiver. While the Second Circuit has not adopted such an exception, it has never expressly rejected it, either.

Tests for the validity of waivers of the right to appeal vary between districts. Some tests are quite vague but others are rather strict. The vague tests usually give a broad exception to the validity of the appellate waiver where a "miscarriage of justice" has occurred. The courts using a vague test - such as the First, Third, and Eighth Circuits - do not fully define the "miscarriage of justice" concept.

Instead of defining "miscarriage of justice," the Third Circuit follows the First Circuit's approach in setting forth factors to consider. These factors include: [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

Juan Jiggetts' appeal is based upon a claim that the court did not give proper weight and/or meaningful consideration to the proliferation of compelling mitigation factors submitted in relation to his background and character, which support a sentence at variance with the sentencing guidelines; and therefore, the sentence imposed was unreasonable.

Juan Jiggetts wants to bring to this court's attention that the sentence imposed is at the highest end of the guidelines range, and devoid of any consideration or credit for mitigating background factors, which raises serious questions of fundamental fairness afforded to him. Juan Jiggetts makes this assertion, even though his plea agreement clearly states that he would not appeal

4

a sentence imposed of 235 months or less. Juan Jiggetts strongly asserts that although he agreed to the terms of the plea agreement, he firmly believed that the court would, in fact, be giving a fair and meaningful consideration of the factors related to his individual background and character as mandated by Congress and set forth in 18 U.S.C. §3553(a).

A close review of the sentence imposed reveals that the court did not apply the 3553(a) factors in a fair, and meaningful manner. As a result, the court imposed a sentence that is 66 months greater than the substantial mandatory minimum sentence of 15 years' imprisonment.

In Juan Jiggetts' case, the district court states that it went through the 3553(a) factors in arriving at a sentence related to his underlying offense, however, the district court accorded no credit to any of the mitigating factors. Juan Jiggetts asserts that he anticipated he would be treated fairly at sentencing, and that in imposing the ultimate sentence, the court would employ a fair and equal application of the factors set forth in 3553(a), and that in so doing arrive at a sentence sufficient but not greater than necessary to reach the sentencing goals of Congress. In his case, the court failed to consider any of the defendant's individual characteristics in mitigation of the sentence imposed. Juan Jiggetts was denied fundamental fairness when the court then imposed the ultimate sentence. The court failed to credit any of the important mandated mitigation factors without any explanation. The result is that Juan Jiggetts was sentenced to serve 235, which was the highest end of the guideline sentencing range, for engaging in conduct that carried a substantial mandatory minimum sentence of 180 months.

The level of disappointment and failed expectations was profound for a defendant who has never previously served a sentence of more than 6 months in prison. While disappointment and failed expectations do not provide a basis for appellate review, it is fundamentally unfair to Juan Jiggetts - - who worked hard on the defense sentencing submission, to present the district court with

compelling mitigating factors that derailed his life and directly impacted and influenced his participation in the crime conduct charged - - that the 3553(a) factors would not be fairly considered in connection with the sentence ultimately imposed on his day of sentencing.

Juan Jiggetts understands that this court is reluctant to grant these applications, where there has been a plea agreement, and the sentence appears to be within the expectations of the parties as articulated and set forth in that plea agreement. Juan Jiggetts understands that an agreement is an agreement, and that the Second Circuit has to be concerned with *"opening the floor gates"* of appellate litigation to defendants who are simply disappointed by the sentence imposed. This reality is fully understood and respected by Juan Jiggetts. However, Juan Jiggetts presents a compelling situation. When there is a sentence of the magnitude imposed in this case (19 years and 7 months), the defendant who must serve that lengthy sentence, is deserving of a fundamentally fair application of Congress' mandate for the meaningful consideration of the compelling mitigation factors that were painstakingly investigated and presented for consideration at the time of sentence. And, at a minimum, there should be some explanation by the district court of the reasons why the compelling mitigation factors presented were not credited - - at all - - in arriving at the sentence imposed. Here, the mere recitation of a review of the factors, in the absence of an explanation, betrays a meaningful consideration of those factors, resulting in a denial of fundamental fairness and due process.

This court has jurisdiction to ensure that an offender who has been sentenced to such a lengthy sentence, along with all the consequences that flow from the service of that sentence, was afforded fundamental fairness. There is no prejudice to the government, whatsoever, should the Second Circuit remand this case back to the district court for at least an explanation of the failure to adequately apply the 3553(a) factors.

It is as a result of the foregoing that Juan Jiggetts prays that this court does not dismiss his appeal. Juan Jiggetts has a long journey ahead, and a difficult sentence to serve. It is our hope that there remains a commitment to fundamental fairness, which is sometimes no more than a fair explanation of the method by which the court arrived at such a substantial sentence to be endured. Justice and mercy warrants as much.

## II. Conclusion

In light of all the reasons set forth above, both legal and factual, the defendant-appellant, Juan Jiggetts, a once promising boy whose life was derailed as a result of the heroin overdose death of his mother when he was only nine months old, the many obstacles imposed by life in a drug infested, violent community (and being shot and critically injured as a result thereof), respectfully requests that United States Court of Appeals for the Second Circuit construe the waiver in his plea agreement with "special due process concerns for fairness," and deny the government's motion to dismiss his appeal, so that this Court may conduct a *de novo* review of the sentence imposed, *in the name of fundamental fairness*.

Dated: New York, New York
July 29, 2024

*Anthony L. Ricco*
Anthony L. Ricco
*Attorney for Juan Jiggetts*